UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

In re:   James E. Showers, Sr. and                Case No. 08-30359-DOT
         Laurie A. Showers,                       Chapter 7
                Debtors

## MEMORANDUM OPINION AND ORDER

**Procedural background** - Debtors filed their voluntary chapter 7 petition on January 29, 2008. Along with their voluntary petition, debtors filed the required schedules and Form 22A, in which they performed the mandatory means test calculation. The meeting of creditors required by § 341 of the Bankruptcy Code, 11 U.S.C. § 341, was held on February 25, 2008.

On March 4, 2008, debtors filed amended schedules, and on March 6, 2008, the U.S. Trustee filed a statement of presumed abuse as required by § 704(b)(1)(a) of the Bankruptcy Code. On April 4, 2008, the U.S. Trustee moved for a dismissal of debtors' case because the presumption of abuse had arisen under § 707(b) of the Bankruptcy Code. Thereafter, on May 8, 2008, debtors again amended their schedules and Form 22A. In addition, they filed a response to the U.S. Trustee's motion for dismissal. Hearing on the U.S. Trustee's motion to dismiss for substantial abuse was held on October 1, 2008.

On September 3, 2008, the court entered an order granting debtors leave to employ new counsel. The next day, debtors again filed amended schedules. On September 10, 2008, Deutsche Bank National Trust Company filed a motion for relief from the automatic stay of the bankruptcy code in order to foreclose against debtors' primary residence. That unopposed motion was granted by order entered October 14, 2008.

1

**Relevant statutory provisions** - Bankruptcy Code § 707(b)(1) provides that the Court may dismiss a case filed by an individual whose debts are primarily consumer debts, if it finds that granting relief would be an abuse of the provisions of Chapter 7. Section 707(b)(2)(A)(i) provides, in pertinent part,

> **(2)(A)(i)** . . . the court shall presume abuse exists if the debtor's current monthly income reduced by [certain deductions] and multiplied by 60 is not less than the lesser of –
> **(I)** 25 percent of the debtor's nonpriority unsecured claims in the case or $6,575.00, whichever is greater; or
> **(II)** $10,950.

11 U.S.C. § 707(b)(2)(A)(i) (2008).

The Bankruptcy Code provides an exception for special circumstances under which a presumption of abuse may be rebutted:

> **(B)(i)** In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
> **(ii)** In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--
> **(I)** documentation for such expense or adjustment to income; and
> **(II)** a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
> **(iii)** The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.
> **(iv)** The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses

2

>   (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of--
>       **(I)** 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or
>       **(II)** $10,000.

11 U.S.C. § 707(b)(2)(B) (2008).

Even if a debtor succeeds in rebutting the presumption of abuse, section 707(b)(3) of the Bankruptcy Code provides, in pertinent part, as follows:

>   **(3)** In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) does not arise or is rebutted, the court shall consider –
>       **(A)** whether the debtor filed the petition in bad faith; or
>       **(B)** [whether] the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3) (2008).

**Findings of fact and analysis** – Debtors' schedules indicate that the majority of debtors' unsecured nonpriority debt is comprised of consumer obligations. Debtors' September 4, 2008, Schedules I and J show gross monthly household income of $10,441.00 and monthly expenses of $8,002.49. On their amended schedule 22A, the means test form, debtors reported gross monthly household income of $11,463.64, an annual gross household income of $137,563.68, and a household size of two persons. Under Form 22A, if debtors' annual gross household income exceeds the applicable median family income for a family consisting of two persons in Virginia on the date the petition was filed, there is no presumption of abuse. The applicable median income in debtors' case is $59,423.00. Therefore, further analysis under Form 22A is required to determine whether the filing should be considered an abuse.

3

According to the means test computation filed by debtors on September 4, 2008, the presumption of abuse does not arise. However, the U.S. Trustee has pointed out a critical error in the calculations made by debtors in that form and on Schedule E. Debtors have included as a priority debt $86,000.00 in student loan debt. This is inappropriate, as student loan debt is not a priority debt listed in § 507 of the Bankruptcy Code and therefore may not be included as such in means testing. Reclassifying this debt as regular unsecured nonpriority debt changes the result of the test. The presumption of abuse arises when the student loan debt is properly classified.

The U.S. Trustee also discovered additional income that Mrs. Showers earned in the six months prior to the filing of the petition. That income was not included in the means test calculation but should have been. The amount of income that was omitted, $3,284.00, raises the gross monthly household income by $547.33 to a total of $12,010.97.

The U.S. Trustee has also pointed out small changes that must be made in the deductions taken by debtors under the standards of the Internal Revenue Service. These changes are minimal, but the court includes them in making its calculations.

With the above changes made to Form 22A, monthly income of debtors is $12,010.97, and expenses are $10,402.24.[1] This results in monthly disposable income of $1,608.73 and a sixty-month disposable income of $96,523.80. This is well in excess of $10,950.00, the maximum sixty-month amount of disposable income allowable by § 707(b)(2)(A) if there is to be no presumption of abuse.

---

[1] The $10,402.24 figure also leaves intact the debtors' original $2,901.34 figure from Line 25 of the Means test for Taxes.

The U.S. Trustee having established the presumption of abuse, the burden shifts to debtors to rebut that presumption. Debtors make two arguments in that regard.

Debtors' first argument is that the income used to complete Form 22A should be based on prospective income, since Mr. Showers' income may change because of reduced overtime. In support of that argument, they have submitted pay advices for him from June 8, 2008, through August 29, 2008. The August 29, 2008, pay advice shows year-to-date gross earnings as $44,222.84.

The Court does not agree with the position taken by debtors. The Bankruptcy Code is quite specific as to the calculation of the means test, having gone so far as to provide Official Form 22A, which breaks down the information required in detail. Section 707(b)(2)(A) requires the use of "current monthly income." That term is defined in § 101(10A) of the Bankruptcy Code as the

> (A) …average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –
> (i)     the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); ….
> and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case, the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents….

11 U.S.C. § 101(10A) (2008).

In light of the specificity with which the legislature has defined what income must be considered in making the means test calculations, this court cannot substitute any other figures absent compelling circumstances. Courts adjusting the income figure have looked

5

for evidence of situations that are out of the control of the debtor, for example, a military deployment causing current income to change.

This court has recently addressed the issue of whether a debtor's income might be adjusted as a "special circumstance." In *In re Parulan*, 387 B.R. 168 (Bankr. E.D. Va. 2008), the court set forth the reasoning behind Congress's adoption of the formal "means test."

> Since 1984, there has been a requirement that a chapter 13 debtor whose plan does not pay claims in full must devote his or her projected disposable income to the plan for 36 months. § 1325(b), Bankruptcy Code. Prior to the enactment of BAPCPA, the enforcement of this requirement traditionally centered on an analysis of the schedules of monthly income and expenses (Schedules I and J) filed by the debtor, with the court making adjustments where the amounts shown were not substantiated or, in the case of expenses, were determined to be unreasonable, unnecessary or excessive. *Such judgments were often, to say the least, highly subjective, with the result that expenses that might be allowed in one court, or by one judge or a particular court, might be disallowed by another.*
> BAPCPA did not change this paradigm for debtors whose household income was less than the statewide median income…. For above-median income debtors, however, two significant changes were made. First the period the debtor was required to pay his or her projected disposable income into the plan was increased from 36 months to 60 months…. Second, disposable income was to be calculated using the "means test" methodology implemented by BAPCPA….

387 B.R. at 170-71 (emphasis added).

*In re Parulan* presented facts similar to those at issue here. The debtor, an administrative assistant for a law firm, filed a voluntary chapter 13 petition. The chapter 13 trustee objected to the debtor's plan, asserting that it did not utilize all of the debtor's disposable income. Debtor argued that because of her loss of overtime pay, her monthly income should be adjusted downward in determining monthly disposable income. This assertion was based upon § 707(b)(2)(B)'s "special circumstances" provision.

Judge Mitchell rejected the debtor's argument on two grounds. First, he held that the debtor had not proven the special circumstance as required by § 707(b)(2)(B)(ii).

6

Thereafter, he found that debtor's situation as it related to overtime was not a "special circumstance" as contemplated by the statute. He remarked that by providing serious medical conditions and calls to active duty in the Armed Forces as examples of "special circumstances" Congress demonstrated an intent "'to set this bar extremely high, placing it effectively off limits for most debtors.'" 387 B.R. at 172 (quoting *In re Haar*, 360 B.R. 759, 760 (Bankr. N.D. Ohio 2007)). In holding that the loss of overtime did not constitute "special circumstances," Judge Mitchell found that:

> Even putting aside the . . . problems already noted, the limited evidence before the court fails to establish that the reduction in available overtime is likely to be permanent, let alone that it is "uncommon," "unusual," or "exceptional." By its very nature, overtime tends to fluctuate. Additionally, the debtor did not provide any evidence to show that there was no reasonable alternative (such as taking on a second job) to mitigate any loss of take-home pay resulting from a reduction or elimination of overtime. For that reason, the court cannot find that the debtor has sufficiently demonstrated "special circumstances" within the meaning of § 707(b)(2)(B) that would justify an adjustment to current monthly income.

387 B.R. at 173.

The instant case is even less compelling than that before the court in *Parulan*. In this case, the debtor husband's overtime was not totally eliminated. There still remains an opportunity for him to work overtime, although perhaps with a reduced number of hours. How much overtime will be awarded him remains to be seen. For now, however, the court agrees with the logic of the court in *Parulan* that overtime tends to fluctuate and that a debtor has the reasonable alternative of seeking other employment to supplement his income. Therefore, the court finds that debtors' income may not be reduced as a "special circumstance" based upon a reduction in overtime hours.

Debtors' second argument is that debtors' student loan payments constitute a "special circumstance" that requires an adjustment to the means test to include them. The

court has considered the argument, but an analysis of the means test reveals that even if the $682.45 student loan payments were included as an expense in the means test analysis, the presumption of abuse would still remain, making it unnecessary to address the argument. Therefore,

IT IS ORDERED that the U.S. Trustee's motion to dismiss is GRANTED, and it is further

ORDERED that debtors' case is hereby DISMISSED, and it is further

ORDERED that dismissal of this case revests the property of the estate in the entity in which such property was vested immediately before commencement of the case and that the trustee need not file a final report in this case unless property or money was distributed.

Signed:  November 19, 2008

          /s/ Douglas O. Tice Jr.
         Chief Judge
         United States Bankruptcy Court
         Eastern District of Virginia

Copies:

Chad Matthew Rinard
Law Office of Chad Rinard, PLLC
709 Westwood Office Park
Fredericksburg, VA 22401

Sherman B. Lubman
P.O. Box 5757
Glen Allen, VA 23058-5757

Shannon Franklin Pecoraro
Robert B. Van Arsdale
Office of the U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

James E. Showers, Sr.
Laurie A. Showers
13910 Marshall Tract Court
Spotsylvania, VA 22551-5554